_____

WENDELL DWAYNE O'NEAL,                            Civil No. 10-2517 (JRT/JJK)

        Plaintiff,

    v.                                                    **REPORT AND
RECOMMENDATION**

LDC COLLECTION SYSTEM, UNKNOWN
RAMSEY 2ND JUDICIAL DISTRICT
CLERK, J.D.B., RAMSEY CLERK,
RAMSEY DISTRICT COURT
ADMINISTRATOR, KAREN MARECK, and
MINNESOTA,

        Defendants.

_____


## I. INTRODUCTION

Plaintiff commenced this action by filing a civil complaint in the United States

District Court for the District of New Jersey.  He did not pay the $350.00 filing for this

action, as required by 28 U.S.C. § 1914(a), but he instead applied for leave to proceed

in forma pauperis, ("IFP"), as permitted by 28 U.S.C. § 1915(a).  The New Jersey court

reviewed Plaintiff's initial submissions in order to determine whether his IFP application

should be granted.  Based on that review, the New Jersey Court found that the case

should be venued in the District of Minnesota.  The case was therefore transferred to

this District.  (See Order dated June 17, 2010; [Docket No. 3].)[1]

_____

[1] It appears that Plaintiff commenced this action in New Jersey in order to avoid
a "Restricted Filer" order that has been entered against him here in the District of
Minnesota.  (See O'Neal v. Moore, 06-2336 (ADM/JSM), Order dated March 13, 2008,
[Docket No. 304].)  The Court takes a very dim view of Plaintiff's transparent attempt to
evade the Restricted Filer order, and he is hereby forewarned that any similar

The transfer order entered by the New Jersey District Court granted Plaintiff's IFP application. (Id.) However, in a separate "Opinion" that accompanied that order, (Docket No. 2), the Court expressly stated that "this Court is neither screening the Complaint nor dismissing the Complaint." The order further states that "this Court is granting the [IFP] Application and transferring the action to a more-appropriate federal district court, <u>which will in turn screen the Complaint under Section 1915(e)(2)(B) and determine whether the Complaint should be dismissed</u>." (Emphasis added.) Thus, the matter is now before the Court to determine whether Plaintiff's current pleading can survive the preliminary screening process prescribed by § 1915(e)(2)(B).[2]

The pleading that is presently before the Court is Plaintiff's "Second Amended Civil Complaint." (Docket No. 10.)[3] For the reasons discussed below, the Court finds

---

subterfuges in the future may result in the imposition of harsh sanctions.

[2] 28 U.S.C. § 1915(e)(2)(B) provides that --

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court <u>shall dismiss the case at any time</u> if the court determines that
    (B) the action or appeal--
    (i) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary relief against a defendant who is immune from such relief." (Emphasis added.)

[3] Plaintiff's original complaint, (Docket No. 1), was superceded by a First Amended Complaint, (Docket No. 9), which Plaintiff was permitted to file "as a matter of course," pursuant to Fed. R. Civ. P. 15(a). According to Rule 15(b), Plaintiff was required to seek leave of Court before filing a Second Amended Complaint, but he failed to do so. For present purposes only, the Court will overlook Plaintiff's violation of Rule 15(b), and his Second Amended Complaint will be accepted. However, Plaintiff should not expect similar indulgences in the future.

that Plaintiff's pleading cannot survive the § 1915(e)(2)(B) screening process.  The

Court will therefore recommend that this action be summarily dismissed.

## II. BACKGROUND

This action is based on events that occurred in St. Paul, Minnesota, on August

15, 2005.  The Minnesota Court of Appeals has described these events, and various

ensuing state court proceedings, as follows:

> "In the early morning hours of August 15, 2005, an employee of the
> Radisson Hotel in downtown St. Paul called 911 to complain that O'Neal
> [i.e., Plaintiff] had been inside the hotel lobby for more than two hours,
> was not a guest, would not heed requests to leave the hotel, and had
> 'yelled profanities' at the hotel employee.  O'Neal was arrested and
> charged with the petty-misdemeanor offense of trespassing, in violation of
> Minn.Stat. § 609.605, subd. 1(b)(3) (2004).  He entered a plea of guilty
> that same day. The district court imposed a sentence of a $50 fine.
> O'Neal did not pursue a direct appeal.
>
> On September 26, 2005, O'Neal filed a postconviction petition in
> the district court in which he sought to withdraw his guilty plea.  He argued
> that his guilty plea was invalid because he did not actually appear before
> the district court and because he was threatened with a disorderly conduct
> charge if he did not plead guilty.  The district court denied the petition, and
> this court affirmed.   O'Neal v. State, A05-2330, 2006 WL 2947470
> (Minn.App. Oct.17, 2006), review denied (Minn. Dec. 20, 2006.) [hereafter
> "O'Neal I"].
>
> On August 21, 2007, O'Neal filed a second postconviction petition
> in which he again sought to withdraw his guilty plea.  The district court
> summarily denied O'Neal's petition on the ground that his claims are
> procedurally barred."

O'Neal v. State, No. A07-1970, (Minn.App. 2008), 2008 WL 2496998 at *1 (unpublished

opinion), rev. denied, Aug. 5, 2008, cert. denied, 129 S.Ct. 502 (2008), [hereafter

"O'Neal II"].  The Minnesota Court of Appeals affirmed the denial of Plaintiff's second

post-conviction motion in O'Neal II.

The events of August 15, 2005, have been the subject of multiple civil actions brought by Plaintiff and litigated in this District. See O'Neal v. Unknown 911 Dispatcher, Civil No. 05-1865 (RHK/JSM); O'Neal v. Unknown 911 Dispatcher, Civil No. 05-1897 (JMR/FLN); O'Neal v. Fang - sic Vang, Civil No. 05-2464 (DSD/SRN); O'Neal v. Moore, Civil No. 06-2336 (ADM/JSM); O'Neal v. Cook, Civil No. 07-2803 (ADM/JSM); O'Neal v. City of St. Paul, Civil No. 07-3947 (ADM/JSM); O'Neal v. City of St. Paul, Civil No. 07-4230 (ADM/JSM). As far as the Court can tell, Plaintiff has not had any success in any of his prior cases. Indeed, it appears that all of these cases were dismissed before trial.

Plaintiff is now attempting to bring new claims against new Defendants, based on the events of August 15, 2005. He is attempting to sue various court administrators for Ramsey County, Minnesota, claiming that they "manufactured" his trespass conviction on August 15, 2005. (Second Amended Civil Complaint, p. 4, ¶s 6-9.) He is also attempting to sue a Defendant identified as "LDC Collection System," for allegedly reporting to a "credit bureau" that he owed a fine and court costs for his trespass conviction. (Id., p. 3, ¶ 2; p. 5, ¶ 13.) Plaintiff further alleges that LDC Collection System later reported that his fine and court costs had been paid, which allegedly misrepresented the existence of his conviction and the resulting fine and court costs. (Id., pp. 7-8, ¶s 21-26.) Finally, Plaintiff is attempting to sue the State of Minnesota for allegedly failing to properly train and supervise the Ramsey County court administrators who allegedly "manufactured" Plaintiff's trespass conviction. (Id., p. 5, ¶ 14.)

Plaintiff is attempting to sue the various Defendants based on a variety of federal and state law theories, including "Fair Credit Report Act Violations," denial of civil rights

in violation of 42 U.S.C. §§ 1983, 1985(1), (2), (3) and 1986, "gross negligence, negligence, wilful, wanton neglect and or reckless disregard," "failure to properly train and or supervise," "misrepresentation; libel and slander," and "intentional infliction of mental anguish and distress."

Plaintiff is seeking an award of punitive damages against the various named Defendants. He also is seeking an injunction that would compel the state district court for Ramsey County, Minnesota, to "remove August 15, 2005 trespass conviction manufactured by defendant clerk Register of Action." (Id., p. 14.)

## III. DISCUSSION

An IFP application will be denied, and the action will be dismissed, if the IFP applicant has filed a complaint that fails to state a claim on which relief may be granted, or if the named defendant is legally immune from the Plaintiff's claims. 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). See also Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam).

### A. Claims Against the State of Minnesota

The Court initially finds that all of Plaintiff's claims against the State of Minnesota must be summarily dismissed because of the State's constitutional immunity. The Eleventh Amendment to the Constitution prohibits individuals from suing states and their agencies in federal court, unless the state has consented to being sued, (Pugh v. Alabama, 438 U.S. 781, 782 (1978) (per curiam)), or Congress has abrogated the state's immunity by some express statutory provision. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66-67 (1989); Egerdahl v. Hibbing Community College, 72 F.3d

5

615, 619 (8th Cir. 1995). Plaintiff's complaint includes no allegations suggesting that the State of Minnesota has consented to be sued in this matter, and Plaintiff has not identified any act of Congress that would abrogate the State's constitutional immunity. Therefore, all of Plaintiff's claims against the State of Minnesota must be dismissed.

B. Claims Based on Federal Law

The Court further finds that all of Plaintiff's federal law claims against all of the remaining Defendants are barred by the principles discussed in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court re-affirmed the longstanding rule that prohibits a federal litigant from challenging the legality of a state criminal conviction in a federal civil rights action. According to Heck –

> "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid..., [a civil rights] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.... [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."

Id. at 486-87 (footnote omitted), (emphasis added).

Even when a plaintiff demands only money damages, he cannot bring a civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." Heck, 512 U.S. at 483. As the Court reiterated in Wilkinson v. Dotson, 544 U.S. 74, 81 (2005), a plaintiff cannot bring a civil rights action "to obtain damages where success would necessarily imply the unlawfulness of a (not previously

invalidated) conviction or sentence." (Emphasis in the original.) <u>See</u> <u>also</u> <u>Madison v.</u>
<u>City of Minneapolis</u>, Civil No. 02-4257 (JRT/FLN), (D.Minn. 2004), 2004 WL 1630953 at
*3 ("In <u>Heck v. Humphrey</u>, the Supreme Court held that a plaintiff may not bring a civil
action for damages that necessarily challenges the validity of plaintiff's previous
conviction or confinement").

In this case, it clearly appears that a judgment in Plaintiff's favor on his current
civil rights claims would necessarily invalidate his state court conviction for trespass. In
fact, Plaintiff is specifically requesting an injunction that would compel the state court to
"remove" that conviction. However, according to <u>Heck</u>, such relief is not available in a
federal civil rights case. Furthermore, the Court finds that <u>any</u> judgment in Plaintiff's
favor, affording him any relief on his civil rights claims would necessarily cast doubt on
the validity of his trespass conviction. Thus, to the extent that Plaintiff is seeking relief
under the federal civil rights laws, his claims are clearly barred by <u>Heck</u>.

The Court recognizes that not all of Plaintiff's current federal claims are brought
under the federal civil rights statutes. Most notably, Plaintiff purports to be seeking relief
under the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 et seq. Because <u>Heck</u>
involved only civil rights claims brought under 42 U.S.C. § 1983, the Supreme Court did
not directly consider whether other types of federal claims – e.g., FCRA claims – would
also be barred, if a judgment in the plaintiff's favor would necessarily cast doubt on the
validity of a criminal conviction against the plaintiff. However, the Court finds no reason
to believe that <u>Heck</u> can properly be applied only in civil rights cases.

The reasoning of <u>Heck</u> does not rest upon any unique features of the federal civil

rights laws. Rather, the Court looked primarily to the "common-law cause of action for malicious prosecution" for guidance on the issues presented in Heck. 512 U.S. at 484. The Court noted that, historically, all courts – state and federal – have been wary of any civil action, (such as malicious prosecution), that could undermine the finality of an existing criminal conviction. The Court pointed out that "[t]his Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." Id. at 484-85.

The Court's holding in Heck is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486. There is no apparent reason why this "hoary principle" should be limited to only common law claims for malicious prosecution and civil rights actions brought under § 1983. The same principle is equally applicable to any type of federal civil action that would, if successful, cast doubt on the validity of a criminal judgment.

The Court's analysis in Heck did not focus on the type of claim that was brought, (i.e., a federal civil rights claim), but rather, the Court was concerned about how the plaintiff's claim, if successful, would effect an existing criminal conviction or sentence. The sine qua non of Heck is the threat to the finality of a criminal conviction, not the means by which the threat is posed. Heck clearly implies that a convicted criminal cannot bring any federal cause of action that would, if successful, effectively negate his conviction. In other words, a federal litigant cannot use any federal civil action, (other than habeas corpus), to collaterally attack a criminal conviction. Thus, the Court concludes that, at least in this particular case, Heck bars all of Plaintiff's claims based

on federal law.[4]

Plaintiff certainly is familiar with Heck, because that case has been cited in at least three of his previously dismissed lawsuits in this District – O'Neal v. Fang - sic Vang, No. 05-2464 (DSD/SRN), O'Neal v. Cook, No. 07-2803 (ADM/JSM), and O'Neal v. City of St. Paul, No. 07-3947 (ADM/JSM).[5]  Plaintiff apparently thinks that Heck is not

---

[4]  Plaintiff's federal claims may also be barred by the doctrine of collateral estoppel.

> "'[C]ollateral estoppel, or issue preclusion, may apply when § 1983 plaintiffs attempt to re-litigate in federal court issues decided against them in state criminal proceedings.' Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir.2003) (citing Allen v. McCurry, 449 U.S. 90, 103 (1980)).  A federal court 'gives a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered.' Id. (citing 28 U.S.C. § 1738).  Under Minnesota law, collateral estoppel will bar a claim if (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.  Id. (citing Willems v. Comm'r of Pub. Safety, 333 N.W.2d 619, 621 (Minn.1983))."

Madison, 2004 WL 1630953 at *4.  In this case, Plaintiff is attempting to relitigate the validity of his trespass conviction.  That issue, however, has already been fully adjudicated in Plaintiff's prior state criminal proceedings.  Those proceedings have resulted in a final judgment, upholding Plaintiff's conviction on the merits.  Moreover, Plaintiff obviously was a party to those proceedings, and he had a full and fair opportunity to be heard on his challenges to the validity of his conviction.  Therefore, the doctrine of collateral estoppel precludes Plaintiff from relitigating his conviction in a federal civil action.

[5]  The Magistrate Judge's Report and Recommendations in No. 07-2803 and No. 07-3947 are particularly noteworthy.  In both of those matters the Magistrate Judge found that:

> "Because plaintiff's conviction for trespass has never been declared invalid  in any state or federal post-conviction proceeding, plaintiff cannot maintain a civil action seeking damages (or any other relief) based on that conviction."

applicable to his present lawsuit, because, in his own mind, he believes he was not actually convicted of trespass in connection with the events of August 15, 2005. That notion, however, is clearly belied by the decisions of the Minnesota Court of Appeals in both of Plaintiff's post-conviction challenges to his trespass conviction. In both of those cases, the Minnesota Court of Appeals found that Plaintiff had entered a guilty plea to the trespass charge filed against him, and in both cases Plaintiff's trespass conviction was affirmed. See O'Neal I, 2006 WL 2947470 at *1; O'Neal II, 2008 WL 2496998 at *1. Plaintiff cannot overcome Heck simply by claiming that his trespass conviction does not really exist – despite two state appellate court decisions holding to the contrary.[6]

## C. Claims Based on State Law

Whether Heck bars Plaintiff's claims based on state law, (i.e., his claims of negligence, gross negligence, misrepresentation, slander, libel, and intentional infliction of mental anguish and distress), is somewhat less clear. Although the reasoning of

---

O'Neal v. Cook, No. 07-2803 (ADM/JSM), Report and Recommendation filed February 17, 2009, [Docket No. 48], p. 20; O'Neal v. City of St. Paul, No. 07-3947 (ADM/JSM), Report and Recommendation filed February 17, 2009, [Docket No. 39], p. 22. (Emphasis added.) In both of these cases, the Magistrate Judge's Report and Recommendation was adopted by the presiding District Court Judge.

[6] Plaintiff apparently expects the Court to also ignore at least two prior federal court decisions that have cited Plaintiff's trespass conviction as a basis for dismissing claims pursuant to Heck. See n. 5, supra, and accompanying text.

It is also worth noting that Plaintiff himself has previously acknowledged, in at least one of his prior federal court pleadings, that he did plead guilty to the trespass charge at issue in this case. In O'Neal v. Yang - sic Vang, Civil No. 05-2464 (DSD/SRN), [Complaint, Docket No. 7-2; p. 7, ¶ 23], Plaintiff alleged that "Defendant Autumn X. Nelson, herein Defendant, caused Plaintiff to plead guilty, to Defendant Vang's false Trespass, supra, charge...." (Emphasis added.)

Heck seems to be fully applicable to state claims as well as federal claims, the ultimate determination of how Heck should be applied to state claims presumably is a matter of state law. The Minnesota Supreme Court, citing Heck, has opined that "civil proceedings are an inappropriate forum to relitigate an issue that was previously decided in a criminal proceeding which resulted in a conviction that has not been reversed." Noske v. Friedberg, 670 N.W.2d 740, 744 (Minn. 2003). This strongly suggests that Plaintiff's current state law claims are barred by the principles set forth in Heck.

However, it is not necessary to fully resolve Plaintiff's state law claims here. If Plaintiff had pleaded some actionable federal claim, then his state law claims could perhaps be entertained under the federal supplemental jurisdiction statute – 28 U.S.C. § 1367.[7] But the absence of an actionable federal claim effectively precludes the Court from exercising supplemental jurisdiction over any possible state law claims. See Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981) ("when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims"); Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 819 (8th Cir.) ("[t]he Supreme Court has noted that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine... will point toward declining to exercise jurisdiction over the remaining state-law claims'"), cert. denied, 543 U.S. 810 (2004), quoting Carnegie-Mellon Univ. v. Cohill,

---

[7] Federal court jurisdiction in this case is predicated on the existence of a federal question. See Second Amended Civil Complaint, [Docket No. 10], p. 2, "Jurisdiction;" Civil Cover Sheet, [Docket No. 1, Attachment 1], § II, "Basis of Jurisdiction."

484 U.S. 343, 350 n. 7 (1988); <u>see</u> <u>also</u> <u>Thomas v. Dickel</u>, 213 F.3d 1023, 1026 (8th Cir.) ("federal courts should 'exercise judicial restraint and avoid state law issues wherever possible'"), <u>cert</u>. <u>denied</u>, 531 U.S. 1013 (2000), quoting <u>Condor Corp. v. City of St. Paul</u>, 912 F.2d 215, 220 (8th Cir.1990).

In this case, (as in most cases), a federal district court would not be the most suitable forum for adjudicating state law claims. <u>See</u> <u>Condor Corp.</u>, 912 F.2d at 220 (stressing "the need to exercise judicial restraint and avoid state law issues wherever possible"). Thus, the Court finds that supplemental jurisdiction should not be exercised in this case, and Plaintiff's state law claims should be dismissed without prejudice.[8]

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that **(1)** Plaintiff's claims against Defendant State of Minnesota should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(iii), because the State is immune from those claims under the Eleventh Amendment; **(2)** all of Plaintiff's federal claims against the remaining Defendants should be summarily dismissed pursuant 28 U.S.C. § 1915(e)(2)(B)(ii), because they are barred by <u>Heck v. Humphrey</u>; and **(3)** supplemental jurisdiction should not be exercised over Plaintiff's state law claims against the remaining Defendants, and those claims should be dismissed without prejudice.

---

[8] Plaintiff should not construe this ruling as an endorsement of the state law claims listed in his Second Amended Complaint. To the contrary, it seems highly unlikely that Plaintiff would have any success if he attempted to bring those claims in a state court action. As discussed above, the Minnesota Court of Appeals has already upheld Plaintiff's trespass conviction on two separate occasions, and it is very doubtful that the state courts would now allow Plaintiff to use a common law tort action to

**V. RECOMMENDATION**

Based upon the foregoing and all of the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's federal law claims against all Defendants be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii);

2.  Plaintiff's state law claims be dismissed without prejudice; and

3.  This action be dismissed.

Dated: August 6, 2010

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 27, 2010, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

collaterally attack his conviction once again.